IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ALLIED PROPERTY AND CASUALTY
INSURANCE COMPANY                                                          PLAINTIFF

v.                             Case No. 3:16-CV-03005

JACKSON FULGHAM D/B/A
COMMERCE STREET PARTNERS, et al.                                           DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Now before the Court are Plaintiff Allied Property and Casualty Insurance Company's ("Allied") Motion for Summary Judgment (Doc. 76), Statement of Facts (Doc. 77), and Brief in Support (Doc. 78), all of which were filed on March 8, 2017. On April 3, 2017, Defendant Jackson Fulgham filed a Response to the Motion (Doc. 92) and then filed an Amended or Supplementary Response (Doc. 93). Thereafter, Allied filed a Reply to the first Response (Doc. 95) and a Brief in Support (Doc. 96), and then filed a Reply to the Amended or Supplementary Response (Doc. 97). The Motion is now ripe for disposition, and for the reasons explained herein, is **GRANTED** as to certain Counts of the Amended Complaint.

This Order will also substantively address three motions filed by Mr. Fulgham, all of which concern his allegation that the attorneys currently representing Allied in this case should be disqualified due to a conflict of interest. The pertinent motions are: (1) Defendant's Motion Seeking to Provide Evidence of Conflict and Request for Removal of Kutak Rock Law Firm in This Matter (Doc. 80); (2) Defendant's Amended Motion Seeking to Provide Evidence of Conflict and Request for Removal of Kutak Rock Law Firm in This

1

Matter (Doc. 82); and (3) Defendant's Motion Seeking Revocation of Pro Hac Vice Privileges of Melanie K. Okon, Lauren Leider, and the Estes Okon Thorne Carr PLLC and Taber Estes Law Firms (Doc. 94). Allied filed Responses to all three Motions. *See* Docs. 89, 90, 91, 100, 101. The Court has given Mr. Fulgham's allegations of attorney misconduct their due consideration, and for the reasons explained in this Order, the Motions (Docs. 80, 82, 94) are **DENIED**.

## I. BACKGROUND

Mr. Fulgham originally filed suit against Allied in the District Court of Dallas County, Texas, on July 11, 2011. The subject of the lawsuit was an insurance coverage dispute. Allied filed a counterclaim against Mr. Fulgham, and in the end, Allied prevailed, and Mr. Fulgham lost. His case was dismissed on summary judgment, and only Allied's counterclaim went to trial. The state court approved the jury's verdict, and judgment was entered in favor of Allied on September 30, 2013, in the amount of $899,160.00, along with pre-judgment interest of $44,958.00, costs of $12,887.80, and post-judgment interest at a rate of 5% per annum (the "Texas judgment").[1] Shortly before the trial of Allied's counterclaim, Mr. Fulgham in his individual capacity purchased two tracts of real property located in Arkansas on June 6, 2013. *See* Docs. 25-1, 25-2 (warranty deeds for real property). These tracts of real property are specifically described in the Amended Complaint in this case and will hereafter be referred to as the "Arkansas Property." *See* Doc. 25, pp. 5-6. The warranty deeds for the two tracts of Arkansas Property were filed

---

[1] The judgment was affirmed by the Court of Appeals of Texas on May 28, 2015. Allied represents that since then, it has collected $178,640.78 against the judgment, by virtue of foreclosing on Mr. Fulgham's Dallas County real property, and that Mr. Fulgham is entitled to a credit against the judgment in that amount.

2

of record in the Office of the Circuit Clerk and Ex-Officio Recorder of Carroll County, Arkansas, on June 7, 2013. *See id.*

When Allied sought to collect on its Texas judgment, it became aware of Mr. Fulgham's ownership in the Arkansas Property. It also eventually became clear to Allied that a number of parties in addition to Mr. Fulgham might claim an interest in the Arkansas Property, by virtue of the fact that he had tried to assign both mortgage and leasehold interests to various parties, namely, All American Truck & Equipment Sales, LLC; L.W. and Melinda Richards; USA Truck and Equipment Sales, LLC; Michael Canada; TFT Family Trust; and Four States Truck Sales, Inc.—all of whom were named as Defendants in this action. The Amended Complaint asserts that Mr. Fulgham, in an attempt to shield the Arkansas Property from collection, fraudulently transferred his interest in the Property to these other Defendants, either while the Texas case was still pending or after final judgment was entered against him, and Mr. Fulgham did not receive a reasonably equivalent value in exchange for these transfers of interest. The Amended Complaint also asserts a claim for foreclosure of lien, noting that Allied registered its Texas judgment in Carroll County, Arkansas on August 8, 2014, thereby attaching a lien to the Arkansas Property that is the subject of this suit. The Amended Complaint further sets forth a claim for civil conspiracy against Defendants Fulgham, Canada, All American Truck & Equipment Sales, LLC, and USA Truck and Equipment Sales, LLC; but the Motion for Summary Judgment does not discuss this civil conspiracy claim, and the Court does not believe that the Motion seeks judgment as to this claim.

Since the Amended Complaint was filed, a number of Defendants have either defaulted, disclaimed interest in the Arkansas Property, been dismissed, or made an

agreement with Allied as to their legal interests in the Property. Beginning with Mr. Fulgham, who represents himself *pro se*, the Court observes that he has participated in his own defense and has filed an Answer to the Amended Complaint and a Response in Opposition to the Motion for Summary Judgment. He attempted to file an answer on behalf of Defendant TFT Family Trust, but that answer was stricken, and TFT Family Trust is now in default. *See* text-only Order of March 28, 2017, striking TFT Family Trust's Answer. Defendants All American Truck & Equipment Sales, LLC and USA Truck and Equipment Sales, LLC are in default. *See* Doc. 40. Defendants L.W. and Melinda Richards are also in default, but subject to Allied's stipulation that they hold a valid mortgage interest in the tracts of real property described in the Amended Complaint, and that their mortgage is superior to Allied's claim and first in line to be paid out of any proceeds collected in this matter. *See* text-only Order of August 8, 2016 (memorializing stipulation as to the Richards' mortgage interest). Defendant Michael Canada appeared in this case, *pro se*, but stipulated during the Court's Case Management Hearing that neither he, nor any other entity managed, operated, or otherwise controlled by him, had any interest in the tracts of real property described in the Amended Complaint. *See* text-only Order of August 8, 2016 (memorializing Mr. Canada's stipulation). Finally, Defendant Four States Truck Sales, Inc. was voluntarily dismissed without prejudice by Allied on July 1, 2016. *See* Doc. 46.

Now that the dust has settled, it is undisputed that the only Defendant claiming an interest in the Arkansas Property—besides the Richards, who negotiated a settlement with Allied concerning the priority of their mortgage interest—is Mr. Fulgham. Turning to the Motion for Summary Judgment, Allied requests that an *in rem* judgment enter against the Arkansas Property in Allied's favor, and that if the judgment is not paid by a date certain,

4

that Allied be declared to have a lien on the Arkansas Property, subject only to the Richards' superior interest, by virtue of their valid mortgage. It is difficult to discern which Counts of the Amended Complaint are the subject of the summary judgment motion, but in any event, it is clear that the relief sought by Allied is the sale of the Arkansas Property and the right to claim the proceeds of that sale in payment of the outstanding Texas judgment.

Mr. Fulgham's Responses to the Motion for Summary Judgment (Docs. 92, 93) are viewed by the Court mainly as an attempt to relitigate the underlying Texas case, and to that extent, the Responses are largely unhelpful in deciding the Motion at hand. The relevant portions of the Responses that attempt to refute Allied's claims of fraudulent transfer are as follows. First, Mr. Fulgham admits that he purchased the Arkansas Property in June of 2013, just before the trial of the Texas case began, but he claims that he did not make the purchase on his own behalf, but did so "acting as trustee for his heirs and assigns . . . with funds belonging to [his] children," and "not with [Mr. Fulgam's] funds." (Doc. 92, p. 7). He provides no evidence to support this claim. He only points to the language of the warranty deeds, which states that "valuable consideration" for the two tracts of land was "paid by Jackson Fulgham, a single person"; and that the tracts were sold and conveyed "unto Jackson Fulgham, a single person, hereafter called GRANTEE, and unto his heirs and assigns forever . . . ." (Docs. 25-1, 25-2).

Immediately after quoting this language from the warranty deeds, Mr. Fulgham interprets it to mean that he, "acting as Trustee for the purpose of purchasing rural residential real estate for his children with funds of his children, closed the transaction on the Arkansas 31 acre property." (Doc. 93, p. 20). He provides no evidence to establish,

5

as a matter of fact, that the TFT Family Trust even exists as a legal entity. *See* Doc. 84-2, p. 3 (responding to Allied's request for production of "a copy of the TFT Family Trust Agreement as well as all amendments thereto and certifications thereof" by claiming that the documents were "presently missing and unavailable" and would not be produced). He provides no evidence to support his claim that the TFT Family Trust purchased the Arkansas Property, or that the funds used to purchase the property came from anyone other than himself. He also fails to explain the contradiction between his claim that the TFT Family Trust purchased the Arkansas Property outright, yet on June 18, 2013, Mr. Fulgham executed a Memorandum of Land and Building Lease as to the Arkansas Property in favor of the TFT Family Trust, "for the lifetime of Jackson Fulgham and the lifetime of his now living heirs plus 21 years." *See* Doc. 25-5.

As to the transfer of interest Mr. Fulgham made to former Defendant Four States Truck Sales, Inc., he explains that the owners of that company made an agreement with him to use the Arkansas Property "at least partially for the benefit of helping disabled US Veterans, especially those who had lost limbs in the Gulf Wars." (Doc. 92, p. 9). He admits, however, that there was "no finalization of a 'formal deal' so to speak, with Four States and there was not any obligation or expectation at any time placed on Four States." *Id.* at 9-10. He then argues that "there was no fraudulent mortgage [with respect to Four States Truck Sales, Inc.], as there was no obligation meant or intended that Four States nor Jeff McCourt, nor his son Jeffrey, nor his father Fred be obligated in any way at that time or in the future." *Id.* at 11. Regardless of Mr. Fulgham's assertions, the record contains a mortgage document filed by Mr. Fulgham with the Circuit Clerk of Carroll County, Arkansas, on August 27, 2013, that purports to grant a security interest in the

Arkansas Property to Four States Truck Sales, Inc. *See* Doc. 25-4. Mr. Fulgham fails to explain in his briefing why he executed a Memorandum of Lease Agreement and Commercial Lease for the Arkansas Property in favor of USA Truck and Equipment Sales and Four States Truck Sales, Inc., and then filed it with the Circuit Clerk of Carroll County, Arkansas, on September 26, 2013. *See* Doc. 25-6.

Finally, as a general defense to Allied's claims, Mr. Fulgham avers:

> There was never any intent to commit fraud on the part of Fulgham. The facts are that there was no Fraud committed by Fulgham. There were alleged acts of Fraud committed by Nationwide, their attorneys and by certain employees. Fulgham motives were to securely set up his children with a property that they could enjoy, along with their children for a lifetime. Fulgham was simply trying to complete a project, secure the children's interest, and prepare a development plan for the children with their funds, so there was nothing of intent, in any way, that what I was doing could or would be considered wrongful or would be considered as being done to deceive anyone. There was simply no intent, and no circumstances that would require scrutiny of one's intent. On the other hand, Fulgham did consult attorneys and with his knowledge that what could go wrong, would go wrong, even under normal circumstances, he purposed to do everything he could to insure a long lasting use and benefit for the children with the purchased property.

(Doc. 93, p. 22).

## II. LEGAL STANDARD

The standard of review for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute

of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)).

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. DISCUSSION

#### A. Motion for Summary Judgment

After reviewing the Motion for Summary Judgment and the complete record in this case, the Court is of the opinion that Allied is seeking summary judgment on Counts II-VI of the Amended Complaint, but not Counts I and VII.[2]

---

[2] Count I is a claim for fraudulent conveyance regarding the mortgage interest held by the Richards. However, Allied admits in its Statement of Facts submitted in support of its Motion for Summary Judgment that the mortgage held by the Richards is, in fact, valid. Allied explains "that Mr. and Mrs. Richards financed $30,000 of the original purchase price paid by Fulgham for the Arkansas Property . . . . [and] Plaintiff has acknowledged that the

Turning to Counts II-V of the Amended Complaint, which allege that Mr. Fulgham fraudulently transferred interest in the Arkansas Property to certain other Defendants, summary judgment is **GRANTED**, as no genuine, material dispute of fact remains as to the fraudulent nature of these transfers. The Arkansas Code defines a "fraudulent transfer" as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;
>> or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (ii) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Ark. Code Ann. § 4-59-204(a).

---

remaining principal balance of their loan will be paid first from the proceeds of the sale." (Doc. 77, p. 6). Since Allied has made an agreement with the Richards that their mortgage interest in the Arkansas Property is valid, Allied cannot simultaneously be seeking summary judgment as to Count I, regarding the invalidity of the transfer of interest.

Count VII is a claim for civil conspiracy involving Mr. Fulgham, Mr. Canada, All American Truck & Equipment Sales, LLC, and USA Truck and Equipment Sales, LLC. All American Truck & Equipment Sales, LLC and USA Truck and Equipment Sales, LLC have both defaulted; but Mr. Fulgham and Mr. Canada have appeared in this lawsuit and deny this claim. As the Motion for Summary Judgment fails to mention this claim at all, the Court finds it is without sufficient information to rule on it as a matter of law.

The statute provides that in determining whether an individual intended to defraud, consideration should be given to the following factors:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Ark. Code Ann. § 4-59-204(b). "Because proof of actual intent to hinder, delay or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer." *In re Sherman*, 67 F.3d 1348, 1353 (8th Cir. 1995). Although the presence of one of the eleven circumstances outlined above, known as "badges of fraud," may not be enough to establish fraudulent intent, the presence of several factors "can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." *Id.* at 1354 (quotation

marks and citation omitted).

Beginning with Count II, it alleges that Mr. Fulgham's grant of a mortgage security interest in the Arkansas Property to Four States Truck Sales, Inc. (Doc. 25-4) was fraudulent. Allied has set forth undisputed proof that Mr. Fulgham acquired the Arkansas Property just prior to the trial of the Texas case, and attempted to transfer some of his interest in the Property to Four States Truck Sales, Inc., in an effort to shift his ownership and interest in the Property to another entity, so it would not be subject to garnishment. Mr. Fulgham has admitted that no consideration was exchanged between himself and Four States Truck Sales, Inc., or any of its owners or principals, as to this transfer of interest. Further, there is no genuine, material dispute of fact that, at the time the Arkansas Property was acquired, a counterclaim had already been filed by Allied against Mr. Fulgham in Texas court and was ready for trial. Finally, there is no dispute of fact that the transfer described in Count II took place shortly before Mr. Fulgham incurred substantial debt, by virtue of the Texas judgment, and that Mr. Fulgham retained possession or control of the Property even after the alleged transfer. *See* Mr. Fulgham's *pro se* Response to the Motion for Summary Judgment, Doc. 92, pp. 9-11. Accordingly, the transfer described in Count II was fraudulent, and judgment will enter in Allied's favor as to Count II.

Count III describes Mr. Fulgham's grant of a leasehold interest in the Arkansas Property to the TFT Family Trust. *See* Doc. 25-5. The relevant, undisputed facts are that the leasehold was granted by Mr. Fulgham after he had been sued in Texas court by Allied, and faced the prospect of incurring substantial financial penalties if Allied prevailed. No consideration was given or received in exchange for the interest described in Count III, and the Court can easily infer that the true purpose of the transfer of interest was to encumber

the property so that it could not be reached—or easily reached—by Allied, Mr. Fulgham's imminent creditor. Mr. Fulgham has failed to meet proof with proof in establishing that the transfer was legitimate in any respect. He admits, in fact, that he intended to shield the Arkansas Property from collection so that it could be enjoyed by his children for their lifetimes. The numerous "badges of fraud" identified by Allied with respect to this transaction indicate that the transfer of interest effectuated by the granting of the leasehold to TFT Family Trust was fraudulent, and Allied will obtain judgment on Count III.

Count IV alleges a fraudulent transfer as to the leasehold conveyed in favor of USA Truck & Equipment Sales, LLC, and Four States Truck Sales, Inc., on June 18, 2013. *See* Doc. 25-6. As was the case with respect to Counts II and III, Allied has established that no genuine, material dispute exists as to Mr. Fulgham's fraudulent intent in conveying this leasehold interest to these companies. The leasehold was granted after Mr. Fulgham had been sued and faced substantial financial penalties; no consideration was given or received; and Mr. Fulgham was unable to produce any evidence of any payments he received under the lease. *See* Doc. 84-2, p. 9. The Court concludes that the true purpose of the transfer of interest was to encumber the property so that it could not be reached—or easily reached—by Allied, Mr. Fulgham's imminent creditor. Moreover, the Memorandum of Lease Agreement and Commercial Lease for the Arkansas Property that is the subject of Count IV was filed with the Circuit Clerk of Carroll County, Arkansas, on September 26, 2013, just four days before final judgment entered in the Texas case. *See* Doc. 25-6. The transfer of the leasehold interest, as described in Count IV, was fradulent, and Allied is entitled to judgment on that claim.

Count V alleges various fraudulent transfers that Mr. Fulgham made immediately

after judgment entered in Allied's favor in the Texas case. On October 2, 2013, Mr. Fulgham conveyed his interest in Tract 1 of the Arkansas Property to All American Truck & Equipment Sales, LLC, by warranty deed (Doc. 25-7), subject to: (1) the leasehold interest he previously conveyed to the TFT Family Trust; (2) the leasehold interest he previously conveyed to USA Truck & Equipment Sales, LLC and Four States Truck Sales, Inc.; and (3) the mortgage he executed in favor of Four States Truck Sales, Inc.—all of which have now been declared by the Court to be fraudulent transfers. Mr. Fulgham admits that he is "unaware of any alleged monetary consideration being paid" in exchange for the transfer of interest in Tract 1 to All American Truck & Equipment Sales, LLC. (Doc. 84-2, pp. 10-11).

The record is also well-developed that Mr. Fulgham executed two deeds as to Tract 2 of the Arkansas Property in favor of All American Truck & Equipment Sales, LLC, on April 24, 2014, more than six months after judgment entered in the Texas case. *See* Docs. 25-9, 25-10. No consideration was tendered in exchange for either of these Tract 2 deeds. *See* Doc. 84-2, p. 12. Mr. Fulgham admits that "the ultimate equity owners of All American Truck and Equipment is [sic] the Trust Family through its equity ownerships and for the benefit of the children and grandchildren of Jackson Fulgham." (Doc. 84-2, pp. 3-4). As previously stated, there is no evidence of the legal existence of the TFT Family Trust. Accordingly, the Court concludes, by Mr. Fulgham's own admission, that All American Truck & Equipment Sales, LLC is either a sham entity, or is otherwise wholly controlled or operated by Mr. Fulgham. The attempted transfer of interest by warranty deeds, for Tracts 1 and 2 of the Arkansas Property, were acts of self-dealing by Mr. Fulgham, and were therefore fraudulent. Allied will be granted judgment on Count V.

Lastly, Count VI is a cause of action for foreclosure of lien. Allied asks that Mr. Fulgham be declared the true owner of the title to the Arkansas Property, by virtue of the fraudulent nature of the transfers of interest described in Counts II-V. The Court finds that Mr. Fulgham individually purchased the Arkansas Property and that his attempts to transfer his interest in this Property to other entities was fraudulent. He is therefore the sole legal owner of the Arkansas Property and has submitted no evidence on summary judgment to lead the Court to believe otherwise. Judgment will be granted in Allied's favor on Count VI. Title to the Arkansas Property will be restored to Mr. Fulgham individually, and judgment *in rem* will enter against the Arkansas Property, so that it may be sold, with the proceeds of the sale to be paid, first, to L.W. and Melinda Richards to satisfy their mortgage interest, and second, to Allied in virtue of its perfected lien interest and in satisfaction of the Texas judgment.

## B. Motions Regarding Attorney Misconduct and Conflict of Interest

Mr. Fulgham has filed numerous motions with the Court that seek the disqualification of law firm of Kutak Rock, LLP, and its attorneys who currently represent Allied in this case. The Court takes allegations of professional misconduct and attorney conflict of interest seriously and has reviewed Mr. Fulgham's Motion Seeking to Provide Evidence of Conflict and Request for Removal of Kutak Rock Law Firm in This Matter (Doc. 80), his Amended Motion Seeking to Provide Evidence of Conflict and Request for Removal of Kutak Rock Law Firm in This Matter (Doc. 82), and his Motion Seeking Revocation of Pro Hac Vice Privileges of Melanie K. Okon, Lauren Leider, and the Estes Okon Thorne Carr PLLC and Taber Estes Law Firms (Doc. 94). As to the last Motion, it appears Ms. Okon has been granted pro hac vice status in this lawsuit; but Ms. Leider is

no longer an attorney of record in this case, and no attorneys representing Allied are from the firms of Estes Okon Thorne Carr, PLLC or Taber Estes.

Mr. Fulgham contends in his first two Motions that Kutak Rock and its attorneys should not be permitted to represent Allied in this lawsuit because Mr. Fulgham was once a client of the firm in 2014, and at that time, the firm agreed to represent him on a matter directly related to the Arkansas Property that is now the subject of the foreclosure action in this Court. Kutak Rock responds that certain members of its law firm—who are not attorneys of record in this case—consulted with Mr. Fulgham regarding a "Warrior-Patriot Project" in 2014, but that Mr. Fulgham never provided the firm with a signed engagement letter or any confidential or proprietary information about the engagement, and also failed to pay the firm's requested retainer. *See* Doc. 89, pp. 2-3. Kutak Rock also asserts that the firm never performed any legal services for Mr. Fulgham related to this 2014 consultation, nor sent him any bills. *See* Doc. 91, p. 3. Lastly, and most importantly, Kutak Rock insists that during consultations with Mr. Fulgham in 2014 as to the "Warrior-Patriot Project," the firm was not provided with any information regarding the Arkansas Property or with any other information that has been or could have been utilized in any way in prosecuting the instant case. *See* Doc. 89, p. 3. To emphasize that point, the lawyers of record from Kutak Rock state: "*All* of the information possessed by the Firm regarding the Arkansas Property was derived from public records, a title commitment that was obtained in connection with the prosecution of this lawsuit, satellite imagery viewed on Google Earth, cursory research of details available on www.zillow.com, and from information provided by Mr. Fulgham during and after the settlement conference ordered by this Court." *Id.*

Kutak Rock does admit that during the course of the instant litigation, Mr. Fulgham

15

let them know that he believed their representation of Allied posed a conflict of interest. Kutak Rock claims that its attorneys referred Mr. Fulgham to the Arkansas Supreme Court's Office of Professional Conduct, and that Mr. Fulgham filed a complaint against Kutak Rock's attorneys alleging attorney misconduct. The Court is without knowledge as to the status of the Committee on Professional Conduct's investigation into Mr. Fulgham's complaint against Kutak Rock, and does not desire to make rulings in this case that would curtail the Committee's more in-depth investigation into these matters. However, with all of that said, the Court is satisfied that, for purposes of resolving the instant case and adjudicating the Motion for Summary Judgment in Allied's favor, there is no convincing evidence that Kutak Rock's attorneys engaged in ethics violations in this Court and should be removed from representing Allied. In particular, this Court has not been presented with evidence that Mr. Fulgham divulged information to his Kutak Rock attorneys in 2014 that either was used or could have been used by Allied's current Kutak Rock attorneys, to Mr. Fulgham's disadvantage. Further, Mr. Fulgham has not presented any evidence that would lead the Court to question whether the 2014 consultation between Mr. Fulgham and Kutak Rock was "the same or a substantially related matter" to the issues present in the case at bar, as per Rule 1.9, Comment 3 of the Arkansas Rules of Professional Conduct. The record is devoid of evidence that the Kutak Rock attorneys with whom Mr. Fulgham consulted in 2014 were, at that time, made aware of the precise nature of Mr. Fulgham's ownership of the Arkansas Property, of any transfers of interest—fraudulent or otherwise—that he had effected as to the Property, or of the existence of the Texas judgment that was entered against him prior to the consultation, back in September of 2013. Accordingly, for the limited purposes described above, Mr. Fulgham's Motions

regarding attorney conflicts (Docs. 80, 82) are **DENIED**.

As to his Motion Seeking Revocation of Pro Hac Vice Privileges of Melanie K. Okon, Lauren Leider, and the Estes Okon Thorne Carr PLLC and Taber Estes Law Firms (Doc. 94), the Motion constitutes an attempt by Mr. Fulgham to re-try the Texas case before this Court, this time by casting aspersions on the attorneys who represented Allied in that case, and who have now entered their appearances in this case. The Court has no interest in rehashing the details of the Texas court case and finds that the issues raised in the Motion are immaterial to the case at bar. The Motion is **DENIED** as to Ms. Okon and **MOOT** as to Ms. Leider and the law firms of Estes Okon Thorne Carr, PLLC, and Taber Estes.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff Allied Property and Casualty Insurance Company's Motion for Summary Judgment (Doc. 76) is **GRANTED**. Judgment will enter in Plaintiff's favor as to Counts II-VI of the Amended Complaint after all other pending claims are finally resolved.

**IT IS FURTHER ORDERED** that Defendant Jackson Fulgham's Motion Seeking to Provide Evidence of Conflict and Request for Removal of Kutak Rock Law Firm in This Matter (Doc. 80) and Amended Motion Seeking to Provide Evidence of Conflict and Request for Removal of Kutak Rock Law Firm in This Matter (Doc. 82) are both **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion Seeking Revocation of Pro Hac Vice Privileges of Melanie K. Okon, Lauren Leider, and the Estes Okon Thorne Carr PLLC and Taber Estes Law Firms (Doc. 94) is **DENIED AS TO MS. OKON AND MOOT AS TO THE OTHER NAMED ENTITIES AND INDIVIDUALS**.

**IT IS SO ORDERED** on this 28th day of April, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE